# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| SONIA SIDNEY,<br><br>    Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>    Defendant. | No. C21-4033-LTS-KEM<br><br>**MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |

## I. INTRODUCTION

This case is before me on a Report and Recommendation (R&R) by the Honorable Kelly K.E. Mahoney, Chief United States Magistrate Judge. *See* Doc. 20. Judge Mahoney recommends that I affirm the decision by the Commissioner of Social Security (the Commissioner) denying Sonia Sidney's application for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Sidney has filed timely objections (Doc. 21). The Commissioner has not filed a response.

## II. APPLICABLE STANDARDS

### A. *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions,

thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789

2

(8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## B. *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

3

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### *III. THE R&R*

Sidney applied for DI benefits on June 27, 2019, based on diabetes mellitus type II, with related sensory ataxia, poor balance, hand numbness, grip problems, problems with walking, foot numbness and right arm tingling. Judge Mahoney considered whether substantial evidence supported the ALJ's finding that Sidney's impairments were not severe prior to September 2017.[1] The ALJ recognized that Sidney suffered from medically determinable impairments prior to September 2017 but found that none were severe. Doc. 20 at 5. Judge Mahoney considered a treatment record from December 2016 indicating that Sidney had reported arthralgias in her ankles and feet. Judge Mahoney observed that treatment records from September 2016 and April 2017 reflected that Sidney denied numbness and tingling in her feet on those occasions. The only other support comes from a November 2019 note, in which Sidney told her provider that she had developed a serious illness associated with fevers, chills and difficulties walking and climbing stairs after a trip to London in 2015. She stated she had been treated with steroids but continued to experience symptoms for six to eight months, which is also around the time her hands started to go numb.

Judge Mahoney reasoned that the potential genesis of Sidney's severe impairment in 2015 did not establish that the impairment itself was severe in 2015. *Id.* The ALJ had recognized that Sidney's impairments, such as sensory ataxia, began prior to September 2017, but found those impairments did not lead to functional restrictions that affected Sidney's ability to work prior to that time. Judge Mahoney noted there were very few

---

[1] Judge Mahoney explained that September 30, 2017, is the operative date because Sidney had accrued coverage for DI benefits through that date via her past employment. Thus, to be entitled to DI benefits, her disability had to have begun before that date. Doc. 20 at 2. *See also Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) (claimant had to establish disability "prior to the expiration of her insurance to be entitled to disability insurance benefits").

treatment notes in the record covering the relevant time period of November 1, 2016 (the alleged onset date), to September 30, 2017. *Id.* at 6. These treatment notes showed Sidney's diabetes was well-controlled. Although one record documented complaints of swelling and arthralgias in Sidney's ankles, fingers and toes, Judge Mahoney observed this did not necessarily mean that Sidney suffered these symptoms throughout the relevant time period.

The two other records discussed above reflected that Sidney denied numbness and tingling in her feet. When she did complain of numbness and other issues beginning in May 2019, Judge Mahoney observed that Sidney suggested the problems with balance and her lower extremities had begun within the last eight months. Sidney also reported numbness and tingling in her hands for the past three years, but because she had never sought treatment for these symptoms, nor complained of them at appointments for other ailments, Judge Mahoney determined the ALJ could find that her gradually worsening symptoms did not become severe enough to affect Sidney's ability to work until after September 2017.[2] Judge Mahoney concluded substantial evidence supports the ALJ's decision that Sidney did not suffer severe impairments prior to September 2017 and recommends affirming the Commissioner's decision.

## IV. DISCUSSION

Sidney makes the following objections to the R&R:

- The ALJ and Judge Mahoney erred in finding Sidney's subjective complaints were not credible

- The opinion of neurologist Elizabeth Hartman, M.D., was entitled to controlling weight

- If the above arguments are correct, then the ALJ relied upon a defective hypothetical question to the vocational expert

---

[2] Any references to November 2017 in the R&R appear to be typographical errors as the established date last insured was September 30, 2017.

Doc. 21 at 4.

## A. Sidney's Subjective Complaints

Sidney argues the ALJ ignored her complaints of numbness in her hands and toes, problems gripping things and with walking and mobility. She contends her testimony at the hearing also supports the onset of her disability in 2016.

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). Accordingly, the court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Id.* To determine a claimant's credibility, the ALJ must consider:

(1) the claimant's daily activities;

(2) the duration, intensity, and frequency of pain;

(3) the precipitating and aggravating factors;

(4) the dosage, effectiveness, and side effects of medication; and

(5) any functional restrictions.

*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); see also Social Security Ruling (SSR) 16-3p.[3] The ALJ need not explicitly discuss each factor, as long as the ALJ acknowledges and considers the factors before discounting the claimant's subjective

---

[3] The Eighth Circuit has acknowledged that SSR 16-3p eliminated use of the term "credibility" and clarified that the evaluation of subjective symptoms is not an examination of an individual's character. *See Noerper*, 964 F.3d at 745, n.3. Rather, the review of subjective assertions is "an examination for the level of consistency between subjective assertions and the balance of the record as a whole." *Id.* The Eighth Circuit notes this ruling largely changes terminology rather than the substantive analysis. *Id.*

6

complaints.  *Goff*, 421 F.3d at 791.  If an ALJ discounts a claimant's subjective complaints, he or she is required to "detail the reasons for discrediting the testimony and set forth the inconsistencies found." *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (quoting *Lewis*, 353 F.3d at 647).

The ALJ explained that because this is a Title II case, the evidence must establish limitations in the ability to do work-related activities prior to the date last insured – September 30, 2017.  AR 14.  The ALJ considered Sidney's written statements and that she stopped working in May 2019 due to her conditions.  *Id.* at 15.  He observed that Sidney had reported taking medication for her conditions with no side effects, then later reported side effects and then later indicated she took no medication for her conditions. *Id.*  While Sidney reported worsening conditions, this occurred in August 2019.  *Id.*

The ALJ also considered Sidney's hearing testimony.  She testified that in 2016, she had diabetes with numbness in her hands and toes, problems with gripping, walking and mobility.  Later, she testified her diabetes was no longer a problem.  Sidney testified she had not worked since November 2016, but admitted she worked for about five weeks in 2018.  She stated she had balance issues in 2017 but could drive and clothe herself. She traveled with her then-husband in 2016 and 2017 and could walk two miles and day and hike for nine miles.  She stated she had problems with her hands and feet for "quite a few years" as of 2016.  In 2018, she had a spinal cord injury, with related brain issues.

When an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, the court should normally defer to the ALJ's credibility determination. *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).  It is not my role to reweigh the evidence.  *See* 42 U.S.C. § 405(g); *see also Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) ("[I]f, after reviewing the record, [the Court] find[s] that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Commissioner's] findings, [the Court] must affirm the decision of the Commissioner.") (citations and quotations omitted).  I find the ALJ's evaluation of Sidney's statements is fair based on the record.

7

The relevant time period is November 1, 2016 (the alleged onset date), to September 30, 2017 (the date last insured). During the hearing, Sidney's attorney identified Exhibit 2F as demonstrating she complained of numbness in her hands and feet prior to September 2017. Exhibit 2F indicates Sidney reported to the Emergency Room on May 31, 2019, for numbness in her hands and feet, stating that it had been ongoing for several months and she had seen her primary care provider about it. AR 782. In the history portion of the note, the physician noted Sidney reported she started experiencing numbness to her fingers and toes "a couple years ago" and over time, the numbness radiated up her arms and legs. *Id.* at 783. Sidney also references a portion of her testimony in which she testified: "The numbing and stuff didn't happen until about, I can say back to three years prior to my spinal cord injury. So, about 2016 is when the numbing started." AR 531. When her attorney asked if she was having problems dropping objects in 2016 and 2017, Sidney stated: "I wasn't having trouble dropping things in 2016. I was having trouble like squeezing things and I was almost overcompensating. Not really knowing completely what I was, what my hands were doing. It was like my brain wasn't communicating with my hands all the way. So, it was like . . . there was something wrong with my fine motor skills." *Id.* at 532.

The ALJ concluded that although the record showed that Sidney had some health-related issues, it did not contain consistent evidence showing that her impairments were of the type or nature that would preclude all employment by the claimant and require a finding of disability prior to September 30, 2017. In reviewing the ALJ's credibility determination I must consider the evidence that both supports and detracts from the ALJ's decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). It is not appropriate to reverse the ALJ's decision simply because some evidence would support a different conclusion. *Perks*, 687 F.3d at 1091. An ALJ is not required to discuss every piece of evidence that was submitted and an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered. *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998).

8

I have considered the record as a whole in determining whether the ALJ's reasons for assessing Sidney's credibility are supported by substantial evidence. Contrary to Sidney's objection, the ALJ did not ignore her complaints of numbness in her hands and toes or problems with grip, walking and mobility, as he specifically mentioned these complaints in his decision. AR 15. Rather, he found that the record, including medical evidence, did not support a finding that those impairments were of the type or nature that would preclude all employment prior to September 2017. This was based on her medical history, including conservative treatment, effective medication and relatively normal examination findings. AR 17. Other evidence in the record demonstrated Sidney was able to take long walks, perform household chores and drive without limitations due to her symptoms. While Sidney points to medical evidence that demonstrates she complained of numbness and tingling in September 2019 that had been present for the past three years, *see* AR 933, this evidence alone is insufficient to find that those impairments were so severe prior to September 2017 that she could not work, particularly in the absence of medical records from around that time documenting any such complaints. And, as Judge Mahoney pointed out, records from September 16, 2016, and April 12, 2017, indicate that Sidney had a recent foot exam and denied any symptoms of burning, numbness or tingling in her feet. *See* AR 760, 775. While she identified arthralgias in her ankles and feet during a December 2016 visit, AR 762, that is a separate issue from numbness and tingling.[4]

I find the ALJ provided good reasons for finding Sidney's impairments were non-severe and that these reasons are supported by the record as a whole. As such, I defer to the ALJ's credibility determination. *See Guilliams*, 393 F.3d at 801 (explaining the court must "defer to the ALJ's determinations regarding the credibility of testimony, so

---

[4] *See* Stedman's Medical Dictionary, 75390 (28th ed. 2006) (defining arthralgia as "pain in a joint").

long as they are supported by good reasons and substantial evidence."). This objection is overruled.

B. *Opinions of Dr. Hartman*

Sidney argues that neither the ALJ nor Judge Mahoney gave sufficient weight to the opinion of Dr. Hartman. Doc. 21 at 4. Specifically, she references a November 26, 2019, letter Dr. Hartman sent to Sidney's primary care provider, describing her assessment of Sidney's condition. AR 117-19. Sidney cites three specific notations:

- "She reports going to London in 2015, and reports developed sever[e] illness associated with fevers, chills and difficulty walking/difficulty going up stairs for 3 months associated with sensation of movement in head with movements with several doctor visits and treated with steroids with lingering symptoms for 6-8 months and feels that her mood changes at that time and her hands started to go numb. She thinks she had meningitis, though no frank nuchal rigidity noted (though has history of ganglionectomy)."

- "She has some early improvements in severity of sensory and gait impairments, though due to severity, probable prolonged duration of compression and visible myelomalacia, she is unlikely to experience full neurology recovery. She currently has disabling sensory loss and gait instability which precludes ability to participate in competitive work environment."

- "Stable and chronic appearing Brain stem MRI with findings are most suggestive of sequela from central pontine myelinolysis though given additional history of 2015 illness, could potentially be a post-infectious sequela."

*Id*. Sidney argues Dr. Hartman looked back in time and analyzed the onset of her problems. While this evidence was not before the ALJ, but submitted to the Appeals Council, Sidney argues the ALJ had a record dated September 26, 2019, containing the same history from Sidney's initial visit on June 13, 2019, indicating that Sidney had been experiencing tingling and numbness in her hands for about three years with severe numbness that affects her fine motor control. AR 933.[5]

---

[5] The ALJ did not discuss medical records after September 30, 2017, stating they "do not provide

10

Judge Mahoney acknowledged the medical records from Dr. Hartman, but stated they were not medical opinions under the regulations because they did not contain her opinion on Sidney's functional limitations. *See* Doc. 20 at 5, n.14. She concluded: "That the (potential) genesis of Sidney's severe impairment began in 2015 does not establish that the impairment itself was severe in 2015." Doc. 20 at 5. She observed there were few treatment notes in the record covering the relevant time period of November 1, 2016, to September 30, 2017, *see* AR 760-87, and the records that did exist generally showed Sidney's diabetes was well-controlled. *Id.* at 6 (citing AR 761, 775). While Judge Mahoney acknowledged that in 2019 Sidney reported numbness and tingling in her hands for the past three years, she reasoned that because Sidney had not sought treatment for these symptoms, nor complained of them at appointments for other ailments, it was fair for the ALJ to conclude that these gradually worsening symptoms did not become severe enough to affect Sidney's ability to work until after September 2017. *Id.*

Sidney argues that a retrospective medical diagnosis can constitute relevant evidence concerning the degree of disability prior to expiration of the insured period. *See List v. Apfel*, 169 F.3d 1148, 1149 (8th Cir. 1999). In *List*, the claimant contracted polio in 1953 and was repeatedly hospitalized in 1955 for related complications. In 1989, he left employment due to difficulty breathing, back pain, ankle pain and shaking and numbness in his fingers. He did not consult a physician from 1989 through 1991. In 1992, he was diagnosed with postpoliomyelitis or "post-polio syndrome." *Id.* at 1149. His insured period expired on December 31, 1991. The Eighth Circuit noted:

> Retrospective medical diagnoses constitute relevant evidence concerning the degree of disability prior to expiration of the insured period. *See Jones v. Chater*, 65 F.3d 102, 104 (8th Cir. 1995). "Where the impairment onset date is critical, however, retrospective medical opinions alone will usually not suffice unless the claimed onset date is corroborated, as by subjective evidence from lay observers like family members." *Id.*

---

evidence to establish the presence of a severe impairment prior to September 2017, and thus are irrelevant to any conclusions regarding this decision." AR 16.

11

*Id.* List did not have any corroborating third-party testimony, but the court concluded that it was not required in his case based on the unique debilitation that characterizes postpoliomyelitis. *Id.*; *see also Jones v. Chater*, 65 F.3d 102, 104 (8th Cir. 1995) (remanding for the ALJ to consider and address retrospective medical diagnosis of PTSD and potentially corroborating evidence proffered by family members).

In addition to treatment records from Dr. Hartman, Sidney notes that the record includes a third-party statement by her mother, which she argues is "undisputed evidence that the Plaintiff's physical problems dated back and continued since she was in London in 2015." Doc. 21 at 7. The ALJ acknowledged and discussed this statement in his decision. *See* AR 16 (citing AR 709-16). He noted that Sidney's mother reported that Sidney had problems with standing, instability, falling and dropping things. However, he concluded her statements did not establish disability because she did not "possess the medical training necessary to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms," nor could she be considered a disinterested witness. *Id.*

I have reviewed the statement and find it contains no information regarding Sidney's condition prior to September 2017 and no reference to Sidney's condition after her trip to London in 2015. *Compare Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984) (in addition to medical opinions that claimant's problems would have taken five to ten years to develop, the record contained evidence from his wife, sister-in-law and son describing that claimant was not able to do certain activities prior to the date last insured). Notably, Dr. Hartman's note indicates that Sidney's mother stated that Sidney's walking had been unsteady since November 2018. AR 947.

The ALJ did not err with regard to the weight given to the medical records from Dr. Hartman. I agree with Judge Mahoney that the notes Sidney references are not medical opinions, but treatment notes or other medical evidence. *Compare* 20 C.F.R. § 404.1513(a)(2) (defining a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more

12

impairment-related limitations or restrictions in [listed] abilities.") *and* 20 C.F.R. § 404.1513(a)(3) (defining other medical evidence as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."). In addition, Dr. Hartman did not make a retrospective medical diagnosis, but merely recorded what Sidney told her. *Id.* ("Sonia reports that she has been having tingling and numbness in bilateral hands for about 3 years with severe numbness that affects her fine motor control, and is dropping items frequently and with significant proprioceptive impairments and sensation of hands feeling swollen."). Dr. Hartman initially saw Sidney in June 2019. *Id.* She ordered an MRI, which revealed multilevel severe spinal stenosis with significant cord flattening and abnormal cord signal. AR 970. Sidney had surgery on June 9, 2019. AR 942.

In September 2019, Dr. Hartman noted: "Stable and chronic appearing Brain stem MRI with findings are most suggestive of sequelae from central pontine myelinolysis potentially on remote basis potentially related to poorly controlled diabetes, though differential includes other metabolic process." AR 935. This is insufficient to establish that Sidney's condition was disabling prior to September 2017. Unlike the evidence in *Basinger*, there is no medical evidence connecting a disabling problem to a condition that existed prior to the end of the insured period. *Id.* The only evidence consists of Sidney's statements in 2019 about when her symptoms began. As Judge Mahoney observed, the medical evidence from the relevant time period does not reflect complaints about those symptoms but rather contains denials of numbness and tingling, at least in her feet.

The ALJ's treatment of the medical records from Dr. Hartman is supported by substantial evidence in the record as a whole and I agree with Judge Mahoney's analysis

13

of these records in concluding they did not require a different outcome. This objection is overruled.[6]

## V. CONCLUSION

For the reasons set forth herein:

1. Plaintiff's objections (Doc. 21) to the Report and Recommendation (Doc. 20) are **overruled**.

2. I **accept** the Report and Recommendation **without modification**. *See* 28 U.S.C. § 636(b)(1).

3. Pursuant to Judge Mahoney's recommendation:

    a. The Commissioner's disability determination is **affirmed**; and

    b. Judgment shall enter against plaintiff and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 28th day of July, 2022.

_____
Leonard T. Strand, Chief Judge

---

[6] Because I have overruled these objections, I need not consider Sidney's third objection, which is dependent on acceptance of her first two arguments to maintain that the ALJ relied on a defective hypothetical question to the vocational expert.